UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JOSEPH PULIZZANO, | No. 2:21-cv-0503 WBS CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JENNIFER BENAVIDEZ, | |
| Respondent. | |

Petitioner is a California prisoner proceeding pro se with an amended petition for writ of habeas corpus (ECF No. 24) under 28 U.S.C. § 2254.  Claim 2 in the amended petition has already been denied. ECF No. 31.  For the reasons which follow, the court recommends that claims 1 and 3 be denied as well and that this case be closed.

I. Background

Following a Tehama County jury trial which ended on May 17, 2016, petitioner was convicted of multiple offenses including attempted murder.  He is serving a sentence of 22 years imprisonment.  ECF 35-15.  On direct appeal, the California Court of Appeal summarized the evidence presented at trial as follows:

> In October 2015, Shelly N. was renting a house in Tehama County. Shelly's adult son, Timothy T., and two of Shelly's friends, Theresa S. and Robert C., also resided in the home.  Defendant, with whom Shelly was involved romantically, was Shelly's landlord.  He lived about two miles from her residence.

1

Defendant and Shelly fought frequently, primarily over defendant's estranged wife interfering in their relationship. Their relationship came under additional strain on October 23, 2015, when Shelly, accompanied by Timothy, Theresa, and Robert, drove to defendant's residence, kicked the door in, and accused defendant of seeing yet another woman. During the ensuing angry confrontation, Shelly threatened to kill the woman she suspected defendant was seeing. Shelly was probably under the influence of drugs at the time; she left for her house with her companions after the argument ended.

The following day, defendant and Shelly exchanged angry phone calls, with Shelly threatening to stab defendant. Defendant also texted her that he had used methamphetamine that day. Shelly used methamphetamine that day as well.

Defendant drove to Shelly's house later in the afternoon, parking his car in front of the house. He stayed in the car while yelling out the window. Timothy was on the front porch smoking a cigarette. Defendant accused him of stealing his guitar and said he wanted it back.

Shelly approached defendant's car and yelled at him to leave. Defendant and Shelly exchanged angry words and screamed obscenities at each other. Theresa and Robert came outside and proceeded to yell at defendant to leave. As the argument ensued, Timothy went to the side of the house and beat on an outdoor kitchen stove in order to control his anger.

As the argument continued, defendant told Shelly her son was going to "get a beat down" and the "ass-whooping he deserves." This enraged Shelly, who responded by punching defendant in the face. Defendant grabbed her arm and pulled Shelly halfway into the car. As he reached for his pocket, Shelly saw a gun; she then freed herself, yelled "gun," and ran towards the house.

Gunshots rang out as Shelly, Theresa, and Timothy ran to the front door. Shelly pushed Timothy and Theresa inside the house, and then ducked down when she got inside.

Timothy ran through the house to the kitchen. Looking around a cabinet, he saw defendant look in his direction and say, "I'm going to get you, little Motherfucker." Defendant fired a round at Timothy, which whizzed past him. Timothy ran out of the house through the back door and called 911 from a neighbor's property.

Defendant stopped shooting and entered the house. When Shelly asked defendant "why" and what was wrong with him, defendant was silent. After defendant said the gun was in his car, Shelly retrieved the firearm and hid it in a trailer on the property because she loved him and was afraid he would go to jail. She also told defendant to wash the gun residue from his hands.

Tehama County Sheriff's deputies were dispatched at 5:20 p.m. When asked about the gunshots, defendant and Shelly each told the deputies that the noise was fireworks. Shelly later recanted this story

and admitted defendant fired his gun. She also told deputies where the gun was hidden.

Expended bullets, fragments, and damage to the house were consistent with bullets being fired at the house. Defendant's car was parked in a location giving it a clear view from the driver's side window to the front door of the house. The gun defendant fired, a revolver, had five spent casings in the cylinder.

ECF No. 33-11 at 2-4.

II. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. See <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular

3

> case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). Here, the only reasoned decision addressing petitioner's claim was issued by the Superior Court of Sacramento County. ECF No. 15-17.

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

III.  Petitioner's Claims

   A.  Attempted Voluntary Manslaughter Instruction

In claim one, petitioner asserts the trial court should have instructed the jury as to the elements of attempted voluntary manslaughter as to count 2 and informed jurors that a finding of guilt as to attempted voluntary manslaughter was an acceptable alternative to a finding of guilt for attempted murder on count 2. With respect to count 2, jurors found petitioner guilty of attempted murder as to Timothy T.

Petitioner does not allege in his amended petition that failing to provide the attempted voluntary manslaughter instruction in the manner suggested violated petitioner's federal rights.

/////

As a petition for a writ of habeas corpus can only be issued based upon a violation of federal law, 28 U.S.C. § 2254 petitioner's first claim must be rejected.

### B. Ineffective Assistance of Counsel

Petitioner asserts he was denied effective assistance of counsel in violation of the Sixth Amendment. In order to establish ineffective assistance of counsel, petitioner must show considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688 (1984). To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

Petitioner alleges as follows:

> My defense attorney Ken Miller blocked my defense.
>
> I told Ken Miller I wanted a speedy trial. I also told him of the text messages and voicemails of death threats made by Shelly Nagle. He then insisted he needed time to have his "expert" make transcripts of the texts and voicemails for trial. He gave the Tehama Co. D.A. 7 months to corrupt the jury pool with the only local paper for the whole county (The Red Bluff Daily News), putting on the front page [the] fake story of "love triangle" and the word "premeditated" with my name for 28 weeks. I even brought this up to Ken Miller and he did nothing. Then at my trial the transcripts of the death threats from Shelly Nagle I waited 7 months in jail for were never brought up. Also, on the original date of my trial the "victims / witnesses" never showed up for court. After the prosecutor asked Judge McGlynn to issue bench warrants and give him 24 hours to find them, the judge asked Ken Miller if this was fine, Miller said, "yes, I think the witnesses are a key point to my client's innocence." I think he should of asked for a dismissal on the grounds that by the witnesses not being at court knowing months in advance of the day shows the probability of them to commit perjury.

ECF No. 24 at 3-4.

/////

5

Petitioner presented these claims to the California Supreme Court on collateral review. ECF No. 33-19. The claims were denied without comment. ECF No. 33-20.

Petitioner fails to adequately allege his trial counsel took any actions which were objectively unreasonable. For the most part, petitioner appears to complain about counsel's actions without providing any context upon which the court could base a finding of objective unreasonableness. While petitioner asserts there were consequences for counsel's agreeing to delay trial, petitioner fails to point to any evidence in support of those allegations.

As for the death threats made by Shelly Nagle which petitioner claims were never presented, petitioner fails to establish prejudice. As indicated above, evidence was presented that petitioner and Ms. Nagle had a combative relationship, Ms. Nagle threatened to stab petitioner and Ms. Nagel punched petitioner in the face shortly before petitioner shot at Ms. Nagle. Petitioner fails to show that the evidence of "death threats" would have added anything material to petitioner's defense.

As for whether counsel should have sought dismissal instead of agreeing to a continuance when witnesses did not appear for trial, petitioner fails to point to anything suggesting such a motion would have been granted so he again does not establish prejudice.

In light of the foregoing, petitioner is precluded from obtaining habeas corpus relief as to his ineffective assistance of counsel claim under 28 U.S.C. § 2254(d). The court cannot find that petitioner has established that the California Supreme Court's denial of the ineffective assistance of counsel claim (1) is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) is based on an unreasonable determination of the facts.[1]

IV.  Conclusion

For all of the foregoing reasons, the court will recommend that claims 1 and 3 in petitioner's amended petition for a writ of habeas corpus be denied, and this case be closed.

---

[1] In his traverse, petitioner argues for the first time that trial counsel was ineffective for failing to ask for a jury instruction as to attempted voluntary manslaughter with respect to count 2. Because it is improper to raise claims for the first time in the traverse, this claim is disregarded. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Claims 1 and 3 in petitioner's amended petition for a writ of habeas corpus (ECF No. 24) be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 13, 2023

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
pulz0503.157